■ QUALIS CARE, L.P., Respondent, v EVERGLADES REGIONAL MEDICAL CENTER, INC., Appellant. [648 NYS2d 580] —Order, Supreme Court, New York County (Walter Schackman, J.), entered April 11, 1996, which, *inter alia*, granted plaintiff's motion for summary judgment to the extent of determining the issue of liability in its favor and dismissing defendant's first three affirmative defenses and counterclaim, unanimously modified, on the law, to deny summary judgment on liability, reinstate the counterclaim and reinstate the second and third affirmative defenses insofar as they assert usury, and otherwise affirmed, without costs.

The motion court incorrectly determined that defendant's affirmative defenses were barred by res judicata and waiver. The order of the Bankruptcy Court, under which the contract between plaintiff's bankrupt assignor and defendant, a health care provider, was assigned to plaintiff, specifically stated that the transfer was subject to the "Transaction Agreements" attached to the order. Thereunder, plaintiff agreed to assume "all liability for claims by any non-Debtor party to a Healthcare Contract" as listed in an appending schedule, which schedule included defendant's contract. Since liabilities arising out of defendant's contract were assumed by plaintiff and not discharged, defendant's claims concerning the contract are not barred (*see, In re Hooker Invs.*, 162 Bankr 426, 431).

There is no merit to defendant's first and third affirmative defenses insofar as they claim that the contract between it and plaintiff's assignor violated the Social Security Act's prohibition against assignment of Medicaid and Medicare payments (42 USC § 1396a [a] [32]; § 1395g [c], respectively). The legislative history of those provisions shows that Congress desired to stop health care providers from assigning their Medicaid and Medicare accounts receivable at a discount to factors who were acting as collection agencies for the accounts and submitting inflated or incorrect claims (*Matter of Missionary Baptist Found.*, 796 F2d 752, 757, n 6). Here, however, defendant made all of the demands for Medicaid and Medicare payments, and the payments, in the form of checks, were actually delivered to defendant. That the assignor would then pick up the checks and deposit them in its own account does not frustrate the purpose of the anti-assignment provisions (*see, United States v Northwest Commerce Bank*, 727 F Supp 403, 406).

However, questions of fact as to whether the assignor's agreement to "purchase" defendant's accounts receivable was in fact a loan, disguised as a purchase, and whether that loan was usurious, are raised by the documentary evidence that defendant always treated the transaction as a loan, plaintiff's own carefully worded and terse complaint seeking recovery of "advances", the absence of any affidavits from the assignor, and the affidavit of a certified public accountant who calculated the interest charged on the money "advances" to defendant as, at times, exceeding an annualized rate of 25%, the threshold level of usurious interest (Penal Law § 190.40; General Obligations Law § 5-521 [3]). Plaintiff contends that the interest was only 24.33% per year, taking into account that defendant's account was not credited immediately upon delivery of checks but rather after a three-day "float period" representing the time between the depositing of the checks and their clearance.

Although plaintiff's method of calculating the interest rate is reasonable under certain circumstances (*see, Baldwin Factors Corp. v C. D. R. Enters.*, 57 AD2d 773, 774), it is unclear whether its assignor and defendant intended to utilize that method, since the assignor did not adopt the "float period" until two to three months after the contract commenced, and there are no affidavits from any of the assignor's principals. Although plaintiff asserts that its assignor was performing a "service" by advancing funds to defendant immediately, and thus was entitled to charge interest until defendant's checks cleared, defendant established that, prior to its arrangement with the assignor, all of its checks cleared the day after being

deposited in its local bank. This raises a triable issue as to whether there really was a service being performed (*see, Hammelburger v Foursome Inn Corp.*, 54 NY2d 580, 594). There is also an issue as to whether an additional 3% "origination fee" was added to the interest charged defendant.

Accordingly, the second and third affirmative defenses are meritorious insofar as they raise usury, and summary judgment should not have been granted on the issue of liability.

We have considered defendant's other arguments and find them to be without merit. Concur—Sullivan, J. P., Milonas, Rubin, Williams and Andrias, JJ.